UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESTA KNIPPER, THE ESTATE
OF CLAYTON ERNES, and
NANCY ERNES,

        Plaintiffs,

v.                                           Case No. 8:11-cv-742-T-24 TGW

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,

        Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 66). Plaintiffs oppose the motion. (Doc. No. 79). As explained below, Defendant's motion is granted.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate

specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II.  Background

Plaintiffs contend that Defendant Allstate Property and Casualty Insurance Company ("Allstate") acted in bad faith in the handling of the insurance claims relating to the injuries sustained by Plaintiff Clayton Ernes ("Mr. Ernes") in an auto accident.[1]  At the time of the accident, Allstate's insured, Plaintiff Esta Knipper, had an auto insurance policy that had bodily injury limits of $100,000 per person.

On January 24, 2008, Knipper was driving her car while on a cell phone and struck a motorcycle operated by Mr. Ernes.  As a result of the accident, Mr. Ernes had to have his leg amputated.  The parties in this case do not dispute that Knipper was at fault for the accident.

Knipper notified Allstate of the accident on the same day that it occurred.  On January 30, 2008, Allstate sent Knipper a letter in which it warned her of the possibility of an excess judgment being entered against her as a result of the accident.  (Doc. No. 67-1, p. 2).  Specifically, Allstate stated the following in the letter:

> [T]he damages appear to exceed your policy limits and you face personal exposure for liability for any damages above your insurance protection . . . .  A jury could determine that you are liable for all or a part of [the] medical bills incurred to date, any future medical bills, any wages lost in the past or in the future as a result of the injuries from the accident, as well as any compensation for non-economic damages such as pain and suffering, inconvenience and loss of enjoyment of life. If a Judgment is entered against you, it may impair your credit, and you may be personally responsible for satisfying any amount of that Judgment above your policy limits.
>
> We will make every effort to settle this case within your insurance coverage in exchange for a full and final release of all claims. However, if the case cannot be

---

[1] While this lawsuit was pending, Mr. Ernes died.  As a result, his estate was substituted in his place as a plaintiff in this case.

> resolved within your policy limits, you may consider contribution of your own funds to resolve the matter and avoid an excess judgment.

(Doc. No. 67-1, p. 2).

Also on January 30, 2008, the Erneses' attorney, Raymond Haas, sent a letter to Allstate to notify Allstate that he was representing the Erneses with respect to the accident. (Doc. No. 67-1, p. 3). In his letter, Haas stated the following:

> [P]lease provide us with a completed financial affidavit from your insured, Esta Knipper, in the form which you will find enclosed, and also have Ms. Knipper complete the two additional affidavits regarding her insurance coverages and agency status at the time of the accident. Please forward your payment for all applicable policy limits immediately as the family is in a dire financial situation.

(Doc. No. 67-1, p.3). The form financial affidavit that was included asked for information regarding Knipper's income, expenses, assets, and liabilities. (Doc. No. 67-1, p. 5-10). The form financial affidavit did not ask for Knipper's social security number, bank account number(s), or credit card number(s). (Doc. No. 67-1, p. 5-10).

On January 31, 2008, Allstate sent a letter to Haas indicating that Allstate would be tendering a check for $100,000 to settle the Erneses' claims. (Doc. No. 67-3, p. 1; Doc. No. 66-6). Additionally, Allstate assigned and paid for an attorney, David Reed, to assist Knipper in filling out the requested financial affidavit.

On February 6, 2008, Reed sent Knipper a letter regarding the financial affidavit. (Doc. No. 71-1, p. 3). Specifically, Reed stated the following in the letter:

> Counsel for the [Erneses] has requested that you provide to him [a] completed personal financial affidavit[].
> \*   \*   \*
> The providing of your personal financial information at this time is voluntary. If you choose not to provide your financial information you may be sued. Alternatively, there is no guarantee that if you provide the information that you will not be sued. Of course, this decision, ultimately, is yours.

> I would like to respond as soon as possible should you decide to do so. After you have had the opportunity to review the enclosed [form financial affidavit], please contact me.

(Doc. No. 71-1, p. 3).

Reed met with Knipper on February 8, 2008 and on February 14, 2008. Those two meetings lasted a total of three hours. After meeting with Reed, Knipper decided to provide the insurance coverage and agency status affidavits, but she decided not to provide the requested financial affidavit due to being "concerned about giving out [her] personal . . . financial information." (Knipper depo I[2], p. 32). When asked at her deposition what specifically concerned her, Knipper responded: "Just having my information, personal information out there. I didn't know who was going to be able to have access to it." (Knipper depo I, p. 32, 41). Knipper contends that she specifically expressed to Reed her privacy concerns regarding the financial affidavit and that it was that concern that caused her to refuse to provide it. (Doc. No. 81, ¶ 4). Knipper had no significant, collectible assets and no other reason to refuse to provide the financial affidavit. (Doc. No. 81, ¶ 6).

On February 15, 2008, Reed sent Knipper a letter regarding what they had discussed during their meetings about providing the financial affidavit. (Doc. No. 71-1, p. 1-2). Specifically, Reed stated the following in the letter:

> As you . . . know, attorney Haas' [January 30, 2008] letter did not impose a specific deadline/due date for his receipt of the requested affidavits from you. Therefore, as we discussed, we are treating this request from attorney Haas to you as "time is of the essence."
>
> As we further discussed at our meetings, the decision is up to you as to whether

---

[2]Citations to "Knipper depo I" refer to Knipper's deposition on August 30, 2011, which is docketed at Doc. No. 67).

4

> you wish to voluntarily furnish your personal financial information via the financial affidavit requested by attorney [Haas]. As I told you, Mr. and Mrs. Ernes may file a lawsuit against you if you do not provide the requested financial affidavit within the very near future. However, at the conclusion of our meeting on February 14, 2008 you informed me that you do not wish to provide the requested financial affidavit to attorney Haas and his clients. Therefore, as we discussed, we will proceed to provide attorney Haas with only your original, signed affidavits addressing insurance disclosure and course and scope of employment.
>
> However, in the event that you reconsider your position and wish to proceed to furnish the requested financial affidavit to the claimants and attorney Haas, please immediately contact me as time is of the essence.

(Doc. No. 71-1, p. 1-2).

On February 20, 2008, Reed sent a letter to Haas, in which Reed informed Haas that "Knipper respectfully declines to provide you with the requested financial affidavit." (Doc. No. 67-3, p. 5-6). In response, on March 4, 2008, Haas sent a letter to Allstate, in which he stated:

> Enclosed is your check in the amount of $100,000.00. Mrs. Knipper declined to provide us with any financial information.
>
> Since we have not received the information, documents and payments as were requested previously,[3] this will confirm that we are interpreting the responses as a rejection of our efforts to settle this matter and we will be proceeding with the necessary litigation.

(Doc. No. 67-4, p. 1).

On March 7, 2008, Reed sent a letter to Knipper informing her of Haas' intent to file suit. (Doc. No. 71-1, p. 4). Specifically, Reed stated the following in the letter:

---

[3]The only evidence before the Court regarding Allstate or Knipper's failure to provide "the information, documents and payments as were requested" is the fact that Knipper failed to provide the requested financial affidavit. Furthermore, Plaintiffs concede in their response to Allstate's motion for summary judgment that Knipper's failure to provide the financial affidavit was the reason the Erneses did not accept the $100,000 policy limit to settle their claims. (Doc. No. 79, p. 17).

> Please allow this to follow up and confirm our telephone conversation on Wednesday, March 5, 2008. As you will recall, I advised you at that time that Allstate had received a letter from claimants' attorney Raymond Haas dated March 4, 2008 returning Allstate's policy limits settlement offer of $100,000.00 and further indicating that attorney Haas considers his clients' settlement demand rejected and that they will be proceeding with litigation.
> \*   \*   \*
> Based on attorney Haas' letter, I expect that the lawsuit against you will be filed . . . .
> \*   \*   \*
> As you and I have previously discussed, the money value of Mr. Ernes' bodily injury claim and the value of his wife's consortium claim against you are uncertain and it is impossible to precisely predict what a jury might award if this matter ultimately proceeds to trial. However, based on the information known to date, a judgment against you in excess of your Allstate bodily injury liability coverage limits of $100,000.00 is very possible.

(Doc. No. 71-1, p. 4). Despite learning that Haas had rejected Allstate's attempt to settle the Erneses' claims for $100,000 due to Knipper's failure to provide a financial affidavit, Knipper did not change her mind regarding providing Haas with the financial affidavit. (Knipper depo I, p. 48-49).

Thereafter, on April 2, 2008, Mr. Ernes and his wife, Plaintiff Nancy Ernes, filed suit against Knipper in state court. A year later, on April 9, 2009, a consent judgment was entered against Knipper for $1.6 million. (Doc. No. 66-1). Thereafter, Knipper assigned part of her bad faith claim against Allstate to the Erneses.

On May 8, 2009, a bad faith lawsuit was filed against Allstate, which was later removed to this Court. The amended complaint (Doc. No. 2) contains two claims: In Count I, Knipper asserts a common law bad faith claim against Allstate. In Count II, the Erneses assert a common law bad faith claim against Allstate. Currently pending before the Court is Allstate's motion for

summary judgment as to both claims.[4]

### III. Motion for Summary Judgment

Allstate argues that it is entitled to summary judgment, because it did not act in bad faith. Plaintiffs contend that Allstate acted in bad faith in two ways: (1) by failing to adequately warn Knipper of the steps she could take to avoid an excess judgment; and (2) by failing to advise Knipper that she could ask Haas for a confidentiality agreement regarding the financial affidavit and/or by Allstate not asking Haas for a confidentiality agreement. As explained below, it is clear that Allstate did not act in bad faith in the handling of the Erneses' claims against Knipper, and as such, Allstate is entitled to summary judgment.

#### A. Law Regarding Bad Faith Claims Handling

In Berges v. Infinity Insurance Co., the Florida Supreme Court explained the purpose of bad faith insurance law:

> Bad faith law was designed to protect insureds who have paid their premiums and who have fulfilled their contractual obligations by cooperating fully with the insurer in the resolution of claims. The insurance contract requires that the insured surrender to the insurance company control over whether the claim is settled. In exchange for this relinquishment of control over settlement and the conduct of the litigation, the insurer obligates itself to act in good faith in the investigation, handling, and settling of claims brought against the insured. Indeed, this is what the insured expects when paying premiums. Bad faith jurisprudence merely holds insurers accountable for failing to fulfill their obligations . . . .

896 So. 2d 665, 682-83 (Fla. 2005).

Twenty-five years earlier, the Florida Supreme Court set forth the standard to be applied

---

[4]Plaintiffs also filed a motion for summary judgment. The Court has considered both motions for summary judgment, as well as all of the exhibits filed in connection with them. However, because the Court finds that Allstate is entitled to summary judgment on Plaintiffs' claims, the Court need not address Plaintiffs' motion for summary judgment.

in bad faith litigation:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980)(internal citations omitted). Thus, "[a]n insurer cannot escape liability for breach of the duty of good faith by acting upon what it considers to be its interest alone." Id. at 786.

In determining whether an insurer has acted in bad faith in handling a claim, the totality of the circumstances standard is applied. See Berges, 896 So. 2d at 680 (citation omitted). While the issue of whether an insurer acted in bad faith is ordinarily a question for the jury, courts have, in certain circumstances, concluded as a matter of law that the insurance company did not act in bad faith. See id. (citation omitted).

### B. Financial Affidavit

Plaintiffs contend that Allstate acted in bad faith by failing to adequately warn Knipper of the steps she could take to avoid an excess judgment. Specifically, they contend that Allstate, through Reed, did not advise Knipper: (1) that she was *required* to provide a financial affidavit, (2) that her failure to provide the financial affidavit would constitute a rejection of Haas' offer, or (3) that her failure to provide the financial affidavit was virtually certain to result in the

Erneses filing a lawsuit against her.[5]  (Doc. No. 67-6, p. 3).

Allstate argues that it is entitled to summary judgment because Allstate and Reed's letters to Knipper show that she was sufficiently advised of the possibility of an excess judgment and of the steps she could take to avoid an excess judgment.  The Court agrees with Allstate.

The undisputed evidence shows that: (1) upon receiving notice of the accident, Allstate warned Knipper that the Erneses' damages appeared to exceed her policy limit and that she would be liable for any damages in excess of her policy limit; (2) Allstate communicated Haas' request for a financial affidavit to Knipper and hired Reed to help her complete it; (3) Reed met with Knipper for three hours to go over Haas' requests; (4) the information that Reed gave Knipper—that if she chose not to provide a financial affidavit, she might be sued, and that there was no guarantee that if she did provide a financial affidavit, she would not be sued—was accurate; and (5) after Haas returned Allstate's check for the $100,000 policy limit, Reed reiterated to Knipper that he expected the Erneses to file suit and that a judgment against her in excess of her policy limit was very possible.  Thus, the Court finds that the undisputed evidence shows that Allstate fulfilled all of its duties to Knipper and that it did so in good faith.

The Court notes that Plaintiffs contend, and the evidence construed in the light most favorable to them supports, that Reed did not advise Knipper that she was *required* to provide a financial affidavit.  However, neither Allstate nor Reed knew, prior to Haas' March 4, 2008 rejection, that the Erneses' claims could definitely not be settled if Knipper did not provide the

---

[5]Plaintiffs point out that Allstate had certain duties, as set forth in Boston Old Colony, that could not be completely delegated to Reed.  As such, to the extent that Reed handled some of those duties for Allstate (including the duty to advise Knipper of the steps that she could take to avoid an excess judgment), his actions and inactions are deemed to be those of Allstate when evaluating whether Allstate acted in bad faith.

requested financial affidavit. It was certainly possible that the Erneses might have accepted the $100,000 policy limit without the financial affidavit, since Haas' January 30, 2008 letter indicated that the Erneses were in a dire financial situation. Allstate, through Reed, communicated to Knipper all the information that it had received from Haas, including that Haas was requesting that Knipper provide a financial affidavit.[6] As such, the Court concludes that Allstate's failure to advise Knipper that she was *required* to provide a financial affidavit is not a sufficient basis to support a bad faith claim.

The Court also notes that Plaintiffs contend, and the evidence construed in the light most favorable to them supports, that Reed did not advise Knipper that her failure to provide the financial affidavit would constitute a rejection of Haas' offer. Even though such was not specifically communicated to Knipper, she cannot contend that she did not understand that her failure to provide the financial affidavit would not be in compliance with Haas' request. Thus, whether her failure to provide the financial affidavit was characterized as a rejection of Haas' offer or a failure to comply with Haas' request, there is no evidence that Knipper did not understand that Haas was requesting that she provide a financial affidavit and that she was choosing not to do so.[7] As such, the Court concludes that Allstate's failure to specifically advise Knipper that her failure to provide the financial affidavit would constitute a rejection of the

---

[6]Furthermore, the Court notes that Knipper submitted an affidavit in this case in which she states that she "was made aware of a conditional offer of settlement by [the] Erneses" and that the "offer required . . . an affidavit of [her] personal finances." (Doc. No. 81, ¶ 3). Thus, it appears that even though Reed did not advise Knipper that the financial affidavit was required, she perceived the financial affidavit to be required by Haas' January 30, 3008 letter.

[7]Furthermore, the Court notes that Plaintiffs state in their motion for summary judgment that Knipper "was advised that she should complete the [requested financial] affidavit." (Doc. No. 64, p. 3).

Erneses' offer is not a sufficient basis to support a bad faith claim.

Additionally, the Court notes that Plaintiffs contend, and the evidence construed in the light most favorable to them supports, that Reed did not advise Knipper that her failure to provide the financial affidavit was virtually certain to result in the Erneses filing a lawsuit against her. However, as previously stated, given that the Erneses were in a dire financial situation, neither Allstate nor Reed knew, prior to Haas' March 4, 2008 rejection, that it was virtually certain that the Erneses' claims would not be settled if Knipper did not provide the requested financial affidavit. Allstate, through Reed, communicated to Knipper all of the information that it had received from Haas. As such, the Court concludes that Allstate's failure to advise Knipper that her failure to provide the financial affidavit was virtually certain to result in the Erneses filing a lawsuit against her is not a sufficient basis to support a bad faith claim.[8]

### C. Confidentiality Agreement

Plaintiffs also contend that Allstate acted in bad faith by failing to advise Knipper that she could ask Haas for a confidentiality agreement regarding the financial affidavit and/or by

---

[8]The Court notes that there is no evidence that had Knipper been given the warnings set forth above (that she was required to provide a financial affidavit and that her failure to provide the financial affidavit would constitute a rejection of Haas' offer and was virtually certain to result in the Erneses filing a lawsuit against her), she would have decided to provide the financial affidavit in response to Haas' January 30, 2008 letter. Instead, Knipper's position throughout her response to Allstate's motion for summary judgment and the evidence before the Court is that she would have provided the financial affidavit *if her privacy concerns were satisfied*. (Doc. No. 79, p. 6, 12, 17, 18; Doc. No. 81, ¶ 6). Thus, there is no basis for the argument that Allstate's failure to give these warnings to Knipper was the cause of her failure to provide the financial affidavit, which led to the Erneses' rejection of the $100,000 policy limit, and which led to the excess judgment being entered against Knipper.

Allstate not asking Haas for a confidentiality agreement.[9]  Knipper states that had her concerns regarding the privacy and confidentiality of her financial information been addressed, she would have provided the financial affidavit.  (Doc. No. 81, ¶ 6).

Allstate, however, argues that it did not have a duty to provide a solution for Knipper's concerns regarding providing the financial affidavit, and as such, a bad faith claim cannot be based on Allstate's failure to fulfill such a duty.  In support of its argument, Allstate cites Maldonado v. First Liberty Insurance Corporation, 546 F. Supp.2d 1347 (S.D. Fla. 2008), aff'd, 342 Fed. Appx. 485 (11th Cir. 2009).

In Maldonado, the claimant died as a result of an automobile accident, and the attorney for the claimant's estate demanded the policy limit of $25,000 plus a financial affidavit from the insureds (the other driver and her husband, who owned the car his wife was driving).  See id. at 1348.  Among the information sought in the financial affidavit was the insureds' social security numbers and bank account numbers.  See id. at 1349.  The insurance company informed the insureds that the claimant would, in all likelihood, not provide them with a release if they did not complete the requested financial affidavit.  See id.  The insureds responded to the insurance company that they would not complete the financial affidavit because it requested their personal information.  See id.  The insurance company again explained to the insureds that their refusal to provide the affidavit might result in the claimant not accepting the policy limits to settle its claim against them.  See id.

---

[9]The Court notes that Plaintiffs did not limit their argument to a confidentiality agreement being the only solution for Knippers' privacy concerns.  Plaintiffs state that Knipper would have been satisfied with any means of protecting the privacy of her financial information.  For simplicity only, the Court refers to a confidentiality agreement as the means for protecting Knipper's privacy throughout this Order.

Thereafter, the insurance company informed the claimant's attorney that its insureds would not fill out the financial affidavit, because it sought extremely personal information that had nothing to do with their assets. See id. The insurance company invited the claimant's attorney to amend the affidavit to seek only information relating to the insureds' assets, and the insurance company stated that it would forward such amended affidavit to its insureds. See id. The claimant's attorney did not amend the affidavit. See id.

Thereafter, the claimant's attorney withdrew his offer to settle for the policy limits and demanded $1 million to be paid within seven days or he would file suit. See id. at 1350. In response, the insurance company sent a letter to its insureds stating that it was requesting that they seriously consider completing and submitting the affidavit, because the insurance company felt that, without the requested affidavit, the claimant would not consider accepting the policy limits offer. See id. The insureds still refused to complete the financial affidavit. See id. at 1351. Thereafter, the claimant filed suit, and a consent judgment for $3 million was entered against them. See id.

Thereafter, the claimant filed a bad faith lawsuit against the insurance company, in which the claimant alleged that the insurance company committed bad faith by, among other things, failing to take steps to address its insureds' privacy concerns regarding the financial affidavit. See id. at 1352. The insurance company moved for summary judgment, and the court granted the motion, stating:

> [T]he duties which [the claimant] seeks to impose upon [the insurance company] are not duties imposed upon insurers as a matter of law.
> \*   \*   \*
> [The insurance company] repeatedly warned the [insureds] of the importance of obtaining a release of liability and that if they did not complete the affidavit, the

13

> [claimant] would likely file a lawsuit against them.
>
> \*   \*   \*
>
> [The claimant] contends that [the insurance company] should have . . . suggested a sworn statement regarding assets to ease the [insureds'] fears regarding putting personal information in the affidavit. . . . [The court has] found no cases—and [the claimant] has cited none—imposing such specific additional duties on an insurer, much less an insurer which offers to settle for the policy limits, advised its insureds of the possibility of excess judgment, and advised its insured to execute the sample affidavit.
>
> \*   \*   \*
>
> [The claimant] seems to suggest that whatever would have changed [the insureds'] mind to sign the affidavit is what the law required [the insurance company] to do, and that the alleged failure to push the right buttons to persuade [the insureds] constitutes bad faith. [The court] find[s] no support for extending the duty owed by an insurer that far.  The [claimant] made its demand, and [the insurance company] sent a check for the policy limit, reasonably insisted on a release for its insured, counseled its insured to comply with the settlement demand—including execution of the sample affidavit—and warned them of the risks of noncompliance. That was the extent of [the insurance company's] duty.

Id. at 1353-59.

This Court finds that the Maldonado decision controls this case and supports Allstate's argument that it could not have committed bad faith by failing to advise Knipper that she could ask Haas for a confidentiality agreement regarding the financial affidavit and/or by Allstate not asking Haas for a confidentiality agreement.  The Court notes Plaintiffs' attempts to argue: (1) that Allstate's duty to advise Knipper of the steps she could take to avoid an excess judgment included the duty to advise her to seek a confidentiality agreement from Haas, and/or (2) that Allstate's duty to explore settlement opportunities required that Allstate ask Haas about the possibility of entering into a confidentiality agreement.  However, Allstate's duty to advise Knipper of the steps she could take to avoid an excess judgment, as well as its duty to explore settlement opportunities, does not extend as far as Plaintiffs suggest.  The current state of the law

does not impose a duty on insurance companies to provide a solution for its insured whenever the insured has concerns regarding compliance with the terms of a claimant's settlement offer, and this Court is not inclined to extend the law to encompass such a duty. Furthermore, even if this Court wanted to impose such a duty on insurance companies, it would be impossible to define where the insurance company's duty would end. Accordingly, the Court finds, as a matter of law, that Allstate did not act in bad faith by failing to advise Knipper that she could ask Haas for a confidentiality agreement regarding the financial affidavit and/or by Allstate not asking Haas for a confidentiality agreement.

**IV. Conclusion**

Based on the above, and considering the totality of the circumstances, it is clear that Allstate did not act in bad faith in the handling of the Erneses' claims against Knipper. Instead, from the very beginning, Allstate stood ready to tender the full $100,000 bodily injury limit and attempted to tender it. Additionally, Allstate communicated to Knipper that the Erneses were requesting a financial affidavit from her, and Allstate hired an attorney to help her comply with that request. Knipper chose not to provide the requested financial affidavit, and it is undisputed that her failure to do so was the sole reason that a settlement of the Erneses' claims against her was not accomplished and litigation ensued. Thus, the Court concludes that Allstate met its duty to act in good faith to protect the interests of Knipper and that no reasonable juror could find that Allstate acted in bad faith. Furthermore, the Court concludes that because Allstate was not the cause of the excess judgment (Knipper's failure to provide the requested financial affidavit was the cause), Allstate cannot be found liable for bad faith. As such, the Court finds, as a matter of law, that Allstate did not act in bad faith and is entitled to summary judgment on Plaintiffs'

claims.

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Doc. No. 66) is **GRANTED**. The Clerk is directed to terminate all pending motions, to enter judgment in favor of Defendant, and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 26th day of March, 2012.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record